**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **GREG JENKINS, SR. and GREG JENKINS, JR.,** | |
| Plaintiffs, | |
| v. | Civil Action No. 7:19-CV-174 (HL) |
| **Sgt. MIKE LEE, TIMOTHY GLASSNER, Sheriff ASHLEY PAULK, and LOWNDES COUNTY, GEORGIA**, | |
| Defendants. | |

**ORDER**

Plaintiffs Greg Jenkins, Sr. and Greg Jenkins, Jr. filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 and state law claiming that Defendants violated their constitutional rights when they unlawfully arrested the father and son and subjected the father to excessive force. Presently pending before the Court is Defendants Mike Lee, Timothy Glassner, Ashley Paulk, and Lowndes County, Georgia's Motion for Summary Judgment. (Doc. 16). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    FACTUAL BACKGROUND

On November 11, 2018, Plaintiffs Greg Jenkins, Sr. ("Jenkins, Sr.") and Greg Jenkins, Jr. ("Jenkins, Jr.") attended a Veteran's Day gathering at the home

of Mr. and Mrs. Anthony Robinson. (Jenkins, Jr. Aff., ¶¶ 1, 6; Jenkins, Sr. Aff., ¶¶ 1, 6; Robinson Aff., ¶ 1). The Jenkinses rode to the Robinsons' home with Zicory Ford. (Jenkins, Jr. Aff., ¶ 6; Jenkins, Sr. Aff., ¶ 6; Ford Aff., ¶¶ 1, 5). Many of the Robinsons' invitees either arrived on or brought their motorcycles on trailers. (Jenkins, Jr. Aff., ¶ 7; Jenkins, Sr. Aff., ¶ 8; Def. Ex. 3, "Disorderly House (2)").[1] There is no evidence that either of the Jenkinses were riding motorcycles. Rather, upon arriving at the Robinsons' home, Jenkins, Sr. settled himself on the bumper of Ford's vehicle. (Jenkins, Sr. Aff., ¶ 7).

Sometime around 4:45 p.m. that same day, Defendant Mike Lee, a Staff Sergeant employed by the Lowndes County Sheriff's Office, responded to complaints of a large gathering and motorcycle racing on Old Naylor Road. (Lee Aff., ¶¶ 5, 8; Lee Aff., Ex. A, p. 1). Lee received a follow up call from Deputy Jay Norman, who informed Lee "that there were many motorcycles and a large group of people gathered at the subject location[,] some of whom were drinking alcohol." (Lee Aff., ¶ 9). Upon arriving at the Robinsons' property, Lee observed approximately 50 individuals and 25 cars and trucks, several of which were pulling trailers with motorcycles. (Lee Aff., Ex. A, p. 1). Lee declared the scene a

---

[1] Defendants' Exhibit 3 contains several body camera videos identified as "Disorderly House (1)"; "Disorderly House (2)"; and "Disorderly House (3)." Defendants did not identify the officer connected to each video. However, upon review the Court discerns that the video labeled "Disorderly House (2)" originated from the body camera of Deputy Jay Norman. Defendants did not provide body camera footage from Defendant Mike Lee, the arresting officer.

"disorderly house" within the meaning of O.C.G.A. § 16-11-44.[2] (Lee Aff., ¶ 10). Lee "shouted to everyone the party was over and everyone must leave." (Lee Aff., Ex. A, p. 1). When the crowd did not immediately disperse, Lee "shouted at the crowd again [that] whomever was not making an attempt to leave when other deputies show[ed] up, they would be arrested." (Id.).

According to Lee, Jenkins, Jr. stood with his hands in his pockets staring at Lee. (Id.). Lee approached Jenkins, Jr., commenting that Jenkins, Jr. "re[eked] of marijuana" and ordering him to place his hands behind his back. (Jenkins, Jr. Aff., ¶ 9).[3] Jenkins, Jr. complied. (Jenkins, Jr. Aff., ¶ 9; Lee Aff., Ex. A, p. 1). Lee conducted a search of Jenkins, Jr. incident to the arrest but found no evidence of drugs. (Lee Aff., Ex. A., p. 1). As Lee escorted Jenkins, Jr. to his patrol car, Jenkins, Sr. asked why his son was being arrested, remarking that Jenkins, Jr. had done nothing wrong. (Jenkins, Sr. Aff., ¶ 10; "Disorderly House (3)"). An officer suggested that Jenkins, Sr. should wait an hour then call the jail to find out the charges. (Id.). During this interchange, the video footage shows that other guests were steadily exiting the Robinsons' property. ("Disorderly House (2)").

---

[2] "A person who keeps and maintains, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of gaming, drinking, or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, is guilty of a misdemeanor." O.C.G.A. § 16-11-44.

[3] This interaction was not captured by any of the body camera footage submitted to the Court. "Disorderly House (2)" and "Disorderly House (3)", however, show that Jenkins, Jr. complied with Lee's command to put his hands behind his back and calmly walked to the patrol car.

Lee returned and ordered Jenkins, Sr. to turn around and place his hands behind his back. (Jenkins, Sr. Aff., ¶ 11; "Disorderly House (3)"). Jenkins, Sr. informed Lee that he was a disabled veteran and that he had a shoulder injury. (Id.). Lee linked multiple sets of handcuffs together to accommodate Jenkins, Sr. (Jenkins, Sr. Aff., ¶ 11; Lee Aff., ¶ 12; "Disorderly House (2)"). Jenkins, Sr. cried out in pain as Lee and another officer walked with him to the patrol car. (Jenkins Sr. Aff., ¶ 11; "Disorderly House (2)"). Jenkins, Sr. is a large man, and he struggled to enter the vehicle. (Id.). On the video, Jenkins, Sr. can be heard exclaiming that he is in pain. ("Disorderly House (2)"). However, the body camera video makes clear that the officers did not force Jenkins, Sr. into the car. (Id.). Jenkins, Sr. asked if the officers had a larger transport vehicle. (Jenkins, Sr. Aff., ¶ 11; Lee Aff., Ex. A, p. 2; "Disorderly House (2)"). The officers informed him that was the largest car available. (Id.). As shown in the video, the officers remained calm throughout these proceedings and permitted Jenkins, Sr. to situate himself as comfortably as possible. (Lee Aff., Ex. A, p. 2; "Disorderly House (2)").

Lee and another officer transported the Jenkinses to the jail. (Lee Aff., Ex. A, p. 2). Lee charged them with misdemeanor obstruction of a law enforcement officer in violation of O.C.G.A. § 16-11-24(a). (Lee Aff., ¶ 11).[4] The Jenkinses

---

[4] Lee claims in his report that he detected the smell of marijuana while arresting Jenkins, Jr.. (Lee Aff., Ex. A, p. 1). However, Lee located no drugs or drug paraphernalia incident to his search of Jenkins, Jr., and Lee did not charge

attempted to explain to Lee that they could not leave the party because they rode there with another guest. (Lee Aff., Ex. A, p. 2). Lee told them "there were many people there[, but he] did not see them ask one person for a ride" nor attempt to call someone for a ride. (Id.).

On November 12, 2018, Lee submitted Affidavits for Arrest for Jenkins, Sr. and Jenkins, Jr. (Lee Aff., ¶ 14; Lee Aff., Ex. B). A Lowndes County Magistrate Judge determined there was probable cause to arrest the Jenkinses and issued arrest warrants. (Id.). Justin C. Cabral, III, the Solicitor-General of the State Court of Lowndes County, exercised his discretion to dismiss the charges. (Cabral Aff., ¶¶ 7, 10). After reviewing the case, Cabral "felt that the finder of fact might have a reasonable doubt regarding" the Jenkinses guilt. (Id. at ¶ 11).

## II.    SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

---

Jenkins, Jr. with any drug related offense. (Id.). Both Jenkins, Sr. and Jenkins, Jr. tested negative for drugs. (Doc. 18-6, p. 2-3).

believes demonstrate the absence of a genuine issue of a material fact." <u>Celotex</u>, 477 U.S. at 323 (quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. <u>Id.</u> at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). When reliable video evidence is available, the court should view the facts in the light depicted by the video recording. <u>Id.</u> at 381; <u>see also</u> <u>Penley v. Eslinger</u>, 605 F.3d 843, 848 (11th Cir. 2010) (inferences for the nonmoving party may be drawn only "to the extent supportable by the record").

Middle District of Georgia Local Rule further provides, in pertinent part:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D.Ga. L.R. 56. "Like other similar rules, Local Rule 56 is designed to protect judicial resources and to streamline the resolution of motions for summary judgment by requiring the parties to organize the evidence." Smith v. Humphrey, Case No. 5:12-CV-15 (MTT), 2014 WL 810915, at *2 (M.D.Ga. Feb. 28, 2014) (citing Reese v. Herbert, 527 F.3d 1253, 1266-72 (11th Cir. 2008)).

As noted by Defendants, Plaintiffs failed to comply with Local Rule 56. Plaintiffs did not respond to each of Defendants' enumerated material facts with specific citations to the record. Instead, Plaintiffs filed a series of affidavits and other documents. Consequently, Defendants argue each of the material facts outlined in their Statement of Material Facts (Doc. 16-4) are deemed admitted and that their motion for summary judgment should be granted.

Plaintiffs' failure to adhere to the rules of procedure "does not, however, automatically entitle the movant to summary judgment." Reese, 527 F.3d at 1268. Defendants, as the moving party, continue "to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily

discharged." Id. Accordingly, even when the district court deems the movant's statement of undisputed facts to be admitted pursuant to the local rule, the Court still must review the record "to determine if there is, indeed, no genuine issue of material fact." Id. at 1269 (internal quotation marks and citation omitted).

"The proper course in applying [the deeming rule] is for a district court to disregard or ignore evidence relied upon by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields [contrary] facts." Id. at 1268. Thus, for the purpose of evaluating Defendants' Motion for Summary Judgment, the Court *may* disregard any evidence submitted by Plaintiffs that contradicts Defendants' statement of fact. See id. at 1270 (suggesting that district courts have "broad discretion" to overlook noncompliance with local rules). The Court has reviewed the evidence submitted by Plaintiffs and finds that it is not in direct conflict with Defendants' version of events. Therefore, in ruling on Defendants' motion for summary judgment, the Court has taken into consideration Plaintiffs' affidavits and other records.

## III.    DISCUSSION

### A.    Plaintiff's Federal Law Claims

#### 1.    Qualified Immunity

Defendant Lee argues that he is entitled to qualified immunity on Plaintiffs' § 1983 claims for false arrest, retaliatory arrest, excessive force, and malicious

prosecution. Because the Court concludes that Lee lacked arguable probable cause to arrest Plaintiffs for obstruction of a law enforcement officer, the Court finds that Lee is not shielded by qualified immunity and that Plaintiffs are entitled to have their Fourth Amendment false arrest claims heard by a jury. However, the Court finds that Plaintiffs' have failed to establish a constitutional violation sufficient to maintain their claims for excessive force, retaliatory arrest, or malicious prosecution and grants Defendants' motion for summary judgment as to those claims.

### a.    General Principles

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity]

protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quotation omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Lee was acting within the scope of his discretionary authority. Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original).

The Supreme Court has established a two-part test to evaluate the applicability of qualified immunity. "The threshold inquiry the court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right

was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Saucier, 533 U.S. at 201).

### b.    False Arrest

"The Fourth Amendment protects individuals from unreasonable search and seizure." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); U.S. Const., amend. IV. "[A]n arrest is a seizure of the person." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing California v. Hodari D., 499 U.S. 621, 624 (1991)). The "reasonableness" of an arrest is "determined by the presence or absence of probable cause for the arrest." Id. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (quotation marks omitted). The probable cause standard "is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." Skop, 485 F.3d at 1137.

"[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Accordingly, "[w]hile an officer who arrests

an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." Skop, 485 F.3d at 1137. To receive qualified immunity, "an officer need not have actual probable cause but only 'arguable probable cause.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). "The standard for arguable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.'" Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997) (emphasis in original) (quoting Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994)). The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop, 485 F.3d at 1137 (emphasis omitted).

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). Establishing arguable probable cause does not require proof of every element of a crime. Id. Rather, if an officer had arguable probable cause to make an arrest for any offense, qualified immunity applies. Skop, 485 F.3d at 1138.

Defendant Lee arrested Plaintiffs for violating Georgia's obstruction statute, which provides:

> a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor.

O.C.G.A. § 16-10-24(a). Obstruction of a police officer "includes any act that directly interferes with, impedes, interrupts, or prevents or perverts the public administration of justice." Panzer v. State, 273 Ga. App. 868, 869 (2005); see e.g., Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004) ("By repeatedly refusing to comply with [the officer's] reasonable instructions, and by acting belligerently and confrontationally, [the plaintiff] hindered" completion of the traffic stop.); Leckie v. State, 231 Ga. App. 760 (1998) ("[P]roof of flight may be sufficient to establish hinderance."); Duke v. State, 205 Ga. App. 689, 690 (1992) ("[L]ying with the intent of misdirecting [an officer] as to the performance of his official duties can certainly constitute a hinderance and authorize a misdemeanor conviction under . . . O.C.G.A. § 16-10-24(a).").

Construing the facts in Plaintiffs' favor, the Court concludes that a reasonable officer in Lee's position could not conceivably have believed that he had arguable probable cause to arrest Plaintiffs for obstruction. Plaintiffs' failure to react immediately to Lee's generalized command that every person on the Robinsons' property vacate the premises in no way obstructed or hindered Lee

from investigating complaints of motorcycle racing and a loud, disorderly party. "To obstruct, resist, or oppose for purposes of obstructing an officer implies forcible resistance and does not mean the refusal to merely obey the police officer's command to move . . . so that the police could perform their duties unimpeded." Woodward v. Gray, 241 Ga. App. 847, 849 (2000); see also Coley v. State, 178 Ga. App. 668 (1986) (finding the evidence insufficient to support an obstruction conviction where the defendant "did nothing more than fail to respond immediately to [the officer's] orders"). Others at the gathering questioned the officers regarding their presence at a private residence and argued that the officers did not have the right to make them leave. But the video evidence shows that Plaintiffs stood quietly to the side. ("Disorderly House (1)"; "Disorderly House (2)"; "Disorderly House (3)"). Plaintiffs simply did not move immediately when instructed to do so. Lee has not otherwise explained how Plaintiffs' conduct "obstructed" or "hindered" his investigation of alleged illegal motorcycle racing and disorderly conduct. Nor has Lee pointed to any case law supporting his position that Plaintiffs' actions constituted obstruction.

Having concluded that Plaintiffs have satisfied the first qualified immunity inquiry—whether Lee violated Plaintiffs' constitutional rights—the Court next asks whether the constitutional violation was clearly established at the time of Plaintiffs' arrest. The answer is an unqualified yes. Eleventh Circuit binding

precedent clearly establishes that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition against unreasonable searches and seizures. <u>Skop</u>, 485 F.3d at 1144 (citing <u>Davis v. Williams</u>, 451 F.3d 759, 764 n.8 (11th Cir. 2006); <u>Thornton v. City of Macon</u>, 132 F.3d 1395, 1399 (11th Cir. 1998)). Because Plaintiffs have shown when the facts are viewed in the light most favorable to them that Lee did not possess arguable probable cause to arrest them, thereby violating clearly established law, they "are entitled to have [their] case heard by a jury." <u>Id.</u> at 1144. The Court therefore **DENIES** Defendant Lee's motion for summary judgment as to Plaintiffs' false arrest claim.

### c.    Retaliatory Arrest

Count IX of Plaintiffs' Complaint asserts a claim for retaliation. (Doc. 1, p. 4). The exact nature of Plaintiffs' claim is not clear. The Court, like Defendants, assumes that Plaintiffs intend to state a First Amendment claim for retaliatory arrest. The First Amendment "prohibits government officials from retaliating against individuals for engaging in protected speech." <u>Lozman v. City of Riviera Beach, Fla.</u>, 138 S. Ct. 1945, 1949 (2018) (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 592 (1998)). "To state a claim for retaliation for exercising their First Amendment rights a plaintiff must establish that (1) the speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection existed between the

retaliatory conduct and the effect on speech." Bethel v. Town of Loxley, 221 F. App'x 812, 813 (11th Cir. 2006). "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. . . ." Hartman v. Moore, 547 U.S. 250, 256 (2006).

Plaintiffs have put forth no evidence that they engaged in constitutionally protected speech or conduct. Therefore, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' claim for retaliatory arrest.

### d.   Excessive Force

In their Complaint, Plaintiffs allege that Defendant Lee forcibly restrained Plaintiff Greg Jenkins, Sr. and caused the door of the patrol vehicle to slam on Jenkins, Sr. (Doc. 1, p. 5). Review of the body camera footage reveals that no unjustifiable force was used while arresting Jenkins, Sr.

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses "the right to be free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotation omitted); see also U.S. Const. amend. IV. To establish an excessive force claim, a plaintiff first must show that he was "seized" within the meaning of the Fourth Amendment. See Vaughan v. Cox, 343 F.3d 1323, 1328 (11th Cir. 2003). A Fourth Amendment

seizure occurs when "there is a governmental termination of freedom of movement *through means intentionally applied*." Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original).

When a seizure occurs, the court next must decide whether the force applied to effectuate the seizure was reasonable. A seizure "alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" Id. at 599. The relevant inquiry is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kessinger ex rel. Estate of Kessinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citing Graham v. Conner, 490 U.S. 386, 397 (1989)). "[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment.). "Qualified immunity applies unless application of the standard would inevitably lead a reasonable officer in the defendant's position to conclude that the force was unlawful." Gold v. City of Miami (Gold I), 121 F.3d 1442, 1446 (11th Cir. 1997) (internal quotation marks and citation omitted).

Jenkins, Sr. informed Lee that he was disabled because of his years of military service. (Jenkins, Sr. Aff., ¶ 11). Jenkins, Sr. admits, and it is clear from the video footage, that Lee attempted to accommodate Jenkins, Sr.'s physical limitations by linking several sets of handcuffs together. (Jenkins, Sr. Aff., ¶ 11; "Disorderly House (2)"; "Disorderly House (3)"). The video further shows Lee and another officer escorting Jenkins, Sr. to the patrol car. ("Disorderly House (2)"). While Jenkins, Sr. can be heard calling out in pain, his exclamations were not in response to any improper conduct by Lee or any other officer present at the scene. (Id.). There being no evidence of the exertion of any force during Jenkins, Sr.'s arrest, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' excessive force claim.

### e.    Malicious Prosecution

Next, Lee moves for summary judgment as to Plaintiffs' claim for malicious prosecution. The Eleventh Circuit recognizes malicious prosecution as a violation of the Fourth Amendment and a cognizable constitutional tort under § 1983. See Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Georgia law, the "six

18

essential elements of a malicious prosecution claim are (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." Renton v. Watson, 319 Ga. App. 896, 898 (2013) (internal quotation marks omitted).

Plaintiffs' malicious prosecution claim fails as a matter of law because Plaintiffs have not provided evidence that Lee acted with malice. The Court accordingly **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' malicious prosecution claim.

### 2.    Failure to Train or Supervise

#### a.    Plaintiffs' Claims against Defendants Paulk and Glassner

Defendant Ashley Paulk is the Sheriff of Lowndes County. Defendant Timothy Glassner is a supervisor with the Sheriff's Office. Plaintiffs do not allege that Paulk or Glassner had any personal involvement in Plaintiffs' November 11, 2018 arrests. Plaintiffs allege only that Glassner knowingly "approv[ed] and condon[ed]" Lee's conduct and that Paulk "failed to supervise and train his subordinate on the proper procedure and correct policies . . . in the handling of arrests." (Doc. 1, p. 4).

"[S]upervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior." Fundiller v. City of Cooper City, 777 F.2d 1436,

1443 (11th Cir. 1985) (citing McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir. 1981)). "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officer comes into contact." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1052 (11th Cir. 2014) (internal quotation marks, alteration, and citation omitted). To establish a claim that a supervisor violated a plaintiff's constitutional rights by failing to train and supervise subordinates, a plaintiff "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." Id. (quoting Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011)). "There must be a causal connection between the actions of the supervisory official and the alleged deprivation." Fundiller, 777 F.2d at 1443 (citations omitted). "This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action." Id.

Plaintiffs have established that there was not arguable probable cause for their arrests. However, Plaintiffs have not produced evidence that the arrests were the product of a lack of adequate training or Paulk or Glassner's deliberate

indifference to Plaintiffs' constitutional rights. The Court accordingly **GRANTS** summary judgment as to Plaintiffs' failure to supervise claims against Defendants Paulk and Glassner.

### b.    Plaintiff's Claims against Lowndes County

Plaintiffs also claim that Lowndes County is responsible for the alleged constitutional violations. The law is well-established that a municipality cannot be held liable for a § 1983 violation premised on a respondeat superior theory of liability; rather, the municipality must itself cause the constitutional violation. Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)). Instead, a county is only liable when a plaintiff establishes that an official custom or policy of the county was the "moving force" behind the constitutional deprivation. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). To succeed on a § 1983 claim against a county, a plaintiff therefore must demonstrate that a constitutional deprivation occurred: (1) pursuant to an officially promulgated policy; (2) as a result of a decision made by a county official with final policymaking authority; or (3) as a result of actions taken pursuant to "custom or usage" with the force of law. Monell, 436 U.S. at 690-91. A single, isolated incident of unconstitutional activity typically is insufficient to impose liability under Monell. Id. at 694.

Plaintiffs have not demonstrated that Lowndes County maintains a policy or custom that caused a constitutional violation and injury. Lowndes County therefore cannot be held liable under § 1983, and summary judgment is appropriate.

### B.     Plaintiff's State Law Claims

Plaintiffs' Complaint raises state law claims for intentional infliction of emotional distress and negligent hiring, training, and retention. Defendants' Motion for Summary Judgment presents no argument as to these claims. Based on the Court's review of the evidence, it is likely that Defendants are entitled to official immunity or, alternatively, that Plaintiffs have not produced sufficient evidence to establish their state law claims. Accordingly, the Court **ORDERS** Defendants to file a supplemental motion for summary judgment addressing Plaintiffs' state law claims. Defendants' motion and brief in support shall be filed by not later than June 30, 2021. Plaintiffs may file a response by July 14, 2021. No reply brief will be permitted. Should Defendants elect not to file a supplemental motion, these claims will proceed to trial.

### VI.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES** Defendants' Motion for Summary Judgment. (Doc. 16). The Court **ORDERS** Defendants to file a supplemental motion for summary judgment addressing

22

Plaintiffs' state law claims by not later than June 30, 2021. Plaintiffs' response to Defendants' motion shall be filed by not later than July 14, 2021.

      **SO ORDERED**, this the 10th day of June, 2021.


          ***s/ Hugh Lawson***_____
          **HUGH LAWSON, SENIOR JUDGE**

aks