IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **GREG JENKINS, SR. and GREG JENKINS, JR.**, <br><br> Plaintiffs, <br><br> v. <br><br> **Sgt. MIKE LEE, TIMOTHY GLASSNER, Sheriff ASHLEY PAULK, and LOWNDES COUNTY, GEORGIA**, <br><br> Defendants. | Civil Action No. 7:19-CV-174 (HL) |

**ORDER**

On June 10, 2021, the Court entered an Order (Doc. 21) granting in part and denying in part Defendants Mike Lee, Timothy Glassner, Ashley Paulk, and Lowndes County, Georgia's Motion for Summary Judgment (Doc. 16). The Court's Order disposed of each of Plaintiffs' federal law claims except their false arrest claim, which the Court permitted to proceed. The parties' briefing did not address Plaintiffs' state law claims. The Court ordered the parties to submit supplemental briefing as to those claims. Now before the Court is Defendants' Response to Court Order and Supplemental Motion for Summary Judgment (Doc. 22). For the following reasons, the Court **GRANTS** Defendants' motion.

**I.     FACTUAL BACKGROUND[1]**

On November 11, 2018, Plaintiffs Greg Jenkins, Sr. ("Jenkins, Sr.") and Greg Jenkins, Jr. ("Jenkins, Jr.") attended a Veteran's Day gathering at the home of Mr. and Mrs. Anthony Robinson. (Jenkins, Jr. Aff., ¶¶ 1, 6; Jenkins, Sr. Aff., ¶¶ 1, 6; Robinson Aff., ¶ 1). The Jenkinses rode to the Robinsons' home with Zicory Ford. (Jenkins, Jr. Aff., ¶ 6; Jenkins, Sr. Aff., ¶ 6; Ford Aff., ¶¶ 1, 5). Many of the Robinsons' invitees either arrived on or brought their motorcycles on trailers. (Jenkins, Jr. Aff., ¶ 7; Jenkins, Sr. Aff., ¶ 8; Def. Ex. 3, "Disorderly House (2)").[2] There is no evidence that either of the Jenkinses were riding motorcycles. Rather, upon arriving at the Robinsons' home, Jenkins, Sr. settled himself on the bumper of Ford's vehicle. (Jenkins, Sr. Aff., ¶ 7).

Sometime around 4:45 p.m. that same day, Defendant Mike Lee, a Staff Sergeant employed by the Lowndes County Sheriff's Office, responded to complaints of a large gathering and motorcycle racing on Old Naylor Road. (Lee Aff., ¶¶ 5, 8; Lee Aff., Ex. A, p. 1). Lee received a follow up call from Deputy Jay Norman, who informed Lee "that there were many motorcycles and a large group

---

[1] The facts stated herein are the same as those outlined in the Court's previous Order. (Doc. 21, p. 1-5).
[2] Defendants' Exhibit 3 contains several body camera videos identified as "Disorderly House (1)"; "Disorderly House (2)"; and "Disorderly House (3)." Defendants did not identify the officer connected to each video. However, upon review the Court discerns that the video labeled "Disorderly House (2)" originated from the body camera of Deputy Jay Norman. Defendants did not provide body camera footage from Defendant Mike Lee, the arresting officer.

of people gathered at the subject location[,] some of whom were drinking alcohol." (Lee Aff., ¶ 9). Upon arriving at the Robinsons' property, Lee observed approximately 50 individuals and 25 cars and trucks, several of which were pulling trailers with motorcycles. (Lee Aff., Ex. A, p. 1). Lee declared the scene a "disorderly house" within the meaning of O.C.G.A. § 16-11-44.[3] (Lee Aff., ¶ 10). Lee "shouted to everyone the party was over and everyone must leave." (Lee Aff., Ex. A, p. 1). When the crowd did not immediately disperse, Lee "shouted at the crowd again [that] whomever was not making an attempt to leave when other deputies show[ed] up, they would be arrested." (Id.).

According to Lee, Jenkins, Jr. stood with his hands in his pockets staring at Lee. (Id.). Lee approached Jenkins, Jr., commenting that Jenkins, Jr. "re[eked] of marijuana" and ordering him to place his hands behind his back. (Jenkins, Jr. Aff., ¶ 9).[4] Jenkins, Jr. complied. (Jenkins, Jr. Aff., ¶ 9; Lee Aff., Ex. A, p. 1). Lee conducted a search of Jenkins, Jr. incident to the arrest but found no evidence of drugs. (Lee Aff., Ex. A., p. 1). As Lee escorted Jenkins, Jr. to his patrol car, Jenkins, Sr. asked why his son was being arrested, remarking that Jenkins, Jr.

---

[3] "A person who keeps and maintains, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of gaming, drinking, or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, is guilty of a misdemeanor." O.C.G.A. § 16-11-44.

[4] This interaction was not captured by any of the body camera footage submitted to the Court. "Disorderly House (2)" and "Disorderly House (3)", however, show that Jenkins, Jr. complied with Lee's command to put his hands behind his back and calmly walked to the patrol car.

3

had done nothing wrong. (Jenkins, Sr. Aff., ¶ 10; "Disorderly House (3)"). An officer suggested that Jenkins, Sr. should wait an hour then call the jail to find out the charges. (Id.). During this interchange, the video footage shows that other guests were steadily exiting the Robinsons' property. ("Disorderly House (2)").

Lee returned and ordered Jenkins, Sr. to turn around and place his hands behind his back. (Jenkins, Sr. Aff., ¶ 11; "Disorderly House (3)"). Jenkins, Sr. informed Lee that he was a disabled veteran and that he had a shoulder injury. (Id.). Lee linked multiple sets of handcuffs together to accommodate Jenkins, Sr. (Jenkins, Sr. Aff., ¶ 11; Lee Aff., ¶ 12; "Disorderly House (2)"). Jenkins, Sr. cried out in pain as Lee and another officer walked with him to the patrol car. (Jenkins Sr. Aff., ¶ 11; "Disorderly House (2)"). Jenkins, Sr. is a large man, and he struggled to enter the vehicle. (Id.). On the video, Jenkins, Sr. can be heard exclaiming that he is in pain. ("Disorderly House (2)"). However, the body camera video makes clear that the officers did not force Jenkins, Sr. into the car. (Id.). Jenkins, Sr. asked if the officers had a larger transport vehicle. (Jenkins, Sr. Aff., ¶ 11; Lee Aff., Ex. A, p. 2; "Disorderly House (2)"). The officers informed him that was the largest car available. (Id.). As shown in the video, the officers remained calm throughout these proceedings and permitted Jenkins, Sr. to situate himself as comfortably as possible. (Lee Aff., Ex. A, p. 2; "Disorderly House (2)").

Lee and another officer transported the Jenkinses to the jail. (Lee Aff., Ex. A, p. 2). Lee charged them with misdemeanor obstruction of a law enforcement officer in violation of O.C.G.A. § 16-11-24(a). (Lee Aff., ¶ 11).[5] The Jenkinses attempted to explain to Lee that they could not leave the party because they rode there with another guest. (Lee Aff., Ex. A, p. 2). Lee told them "there were many people there[, but he] did not see them ask one person for a ride" nor attempt to call someone for a ride. (Id.).

On November 12, 2018, Lee submitted Affidavits for Arrest for Jenkins, Sr. and Jenkins, Jr. (Lee Aff., ¶ 14; Lee Aff., Ex. B). A Lowndes County Magistrate Judge determined there was probable cause to arrest the Jenkinses and issued arrest warrants. (Id.). Justin C. Cabral, III, the Solicitor-General of the State Court of Lowndes County, exercised his discretion to dismiss the charges. (Cabral Aff., ¶¶ 7, 10). After reviewing the case, Cabral "felt that the finder of fact might have a reasonable doubt regarding" the Jenkinses guilt. (Id. at ¶ 11).

## II.  SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[5] Lee claims in his report that he detected the smell of marijuana while arresting Jenkins, Jr.. (Lee Aff., Ex. A, p. 1). However, Lee located no drugs or drug paraphernalia incident to his search of Jenkins, Jr., and Lee did not charge Jenkins, Jr. with any drug related offense. (Id.). Both Jenkins, Sr. and Jenkins, Jr. tested negative for drugs. (Doc. 18-6, p. 2-3).

5

a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). When reliable video evidence is available, the court should view the facts in the light depicted by the video

recording. Id. at 381; see also Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010) (inferences for the nonmoving party may be drawn only "to the extent supportable by the record").

### III. DISCUSSION

In their Complaint, Plaintiffs raise state law claims for intentional infliction of emotional distress and negligent hiring, training, and retention. Defendants move for summary judgment as to these claims, arguing that they are entitled to the protection of sovereign and official immunity. The Court agrees.

#### A. Sovereign Immunity

"The doctrine of sovereign immunity . . . protects all levels of governments from legal action unless they have waived their immunity from suit." Watts v. City of Dillard, 294 Ga. App. 861, 862 (2008) (quotation marks and citation omitted). "As a general rule, counties enjoy sovereign immunity." Layer v. Barrow Cnty., 297 Ga. 871, 871 (2015). And, since suits against county officers are in reality suits against the county itself, county officers sued in their official capacities "enjoy the same sovereign immunity." Id. Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, art. I, § 2, par. IX(e) Any waiver of sovereign immunity must be

demonstrated by the party who seeks to benefit from the waiver. Butler v. Carlisle, 299 Ga. App. 815, 818 (2009).

Plaintiffs have offered no evidence that the General Assembly waived sovereign immunity for the state law claims raised in this case. Therefore, any state law claims asserted against Defendant Lowndes County or against Defendants Lee, Glassner, or Paulk in their official capacities are barred by sovereign immunity.

### B.     Official Immunity

Plaintiffs' state law claims against Lee, Glassner, and Paulk in their individuals capacities are barred by the doctrine of official immunity. "Under Georgia law, county law enforcement officers are entitled to official immunity from suit and liability unless they '. . . act with actual malice or an intent to injure when performing a discretionary act.'" Speight v. Griggs, 579 F. App'x 757, 759 (11th Cir. 2014) (quoting Roper v. Greenway, 294 Ga. 112, 113 (2013)), and (citing Ga. Const. art. I., § 2, para. IX(d)). "Actual malice requires more than harboring bad feelings about another," Adams v. Hazelwood, 271 Ga. 414, 415 (1999), but does not include "implied malice" or a showing of "the reckless disregard for the rights or safety of others," Murphy v. Bajjani, 282 Ga. 197, 203 (2007). Rather, actual malice refers to "a deliberate intention to commit a wrongful or illegal act," Tittle v. Corso, 256 Ga. App. 859, 862 (2002), that "may be accomplished with or

without ill will and whether or not injury was intended," Adams, 271 Ga. at 415. "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff[ ]." Selvy v. Morrison, 292 Ga. App. 702, 704 (2008).

    The parties agree that Defendant Lee was acting within the scope of his discretionary authority when he arrested Plaintiffs. Therefore, the only question before the Court is whether there is evidence that any of the named Defendants acted with actual malice or actual intent to injure Plaintiffs. Plaintiffs' Complaint alleges that Defendants Lee, Glassner, and Paulk acted intentionally and maliciously to cause them harm; however, Plaintiffs have presented no evidence to support this allegation. (Doc. 1, p. 4). The undisputed evidence is that Defendant Lee arrested Plaintiffs. While the Court previously found that there was evidence from which a reasonable jury could conclude there was not probable cause for the arrest, Plaintiffs' have pointed to no evidence to support their contention that Lee intentionally or maliciously hurt or mistreated them. "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies." Reed v. DeKalb Cnty., 264 Ga. App. 83, 86 (2003). Absent evidence that Lee's actions "were taken with actual malice," official immunity applies. The Court accordingly grants Defendants'

motion for summary judgment as to Plaintiff's state law claims against Defendants Lee, Glassner, and Paulk.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Supplemental Motion for Summary Judgment. (Doc. 22). Plaintiffs' state law claims are dismissed. Plaintiffs' remaining federal law claim for false arrest against Defendant Sergeant Mike Lee shall proceed to trial. The Court will place this case on its next available trial calendar.

**SO ORDERED**, this the 26th day of August, 2021.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks